<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>QUINCY PALMER,<br><br>                    Defendant. | Crim. No. 22-00282 (GC)<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

      This matter comes before the Court upon Defendant Quincy Palmer's motion to dismiss the indictment for violations of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174. (ECF No. 43.) The Government opposed, and Palmer replied. (ECF Nos. 46 & 47.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1.[1] For the reasons set forth below, and other good cause shown, Palmer's motion is **GRANTED** in part and **DENIED** in part. The indictment is **DISMISSED WITHOUT PREJUDICE**.

**I.    <u>BACKGROUND</u>**

**A.    Factual and Procedural History**

      On November 19, 2021, Palmer was charged in a one-count complaint for knowingly possessing a firearm "knowing that he had previously been convicted of a crime punishable by

---

[1]      Local Civil Rule 78.1 is applicable to criminal cases in the District of New Jersey. See L. Civ. R. 1.1.

imprisonment for a term exceeding one year in the United States District Court for the Southern District of New York," in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 1.)  The charge arose after a traffic stop and resulting struggle that lead law enforcement to discover that Palmer allegedly possessed stolen a .45 caliber Armscor semiautomatic pistol.[2]  (ECF No. 34-1 at 2-4; ECF No. 35 at 14.[3])  Palmer is alleged to have five prior felony convictions that occurred between 2006 and 2016, including convictions for third-degree robbery, second-degree attempted robbery, second-degree attempted assault, first-degree attempted making or possessing dangerous contraband in prison, and unlawful possession of a firearm as a convicted felon.  (*See* ECF No. 46 at 9-10.)

On November 22, 2021, Palmer made his initial appearance on the instant charge.[4]  (ECF No. 3.)  The Court subsequently entered three joint continuance orders under 18 U.S.C. § 3161(h)(7), and one standing order tolling time under the Speedy Trial Act due to the COVID-19 pandemic.  (ECF Nos. 8, 10, 11, 12.)    On April 14, 2022, a grand jury indicted Palmer for possessing a firearm "knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year" in violation of § 922(g)(1).  (ECF No. 13.)  On May 16, 2022, Palmer was arraigned and entered a plea of not guilty.  (ECF No. 16.)

---

[2]     The Court incorporates and presumes the reader's familiarity with this case's factual background, of which a full recitation may be found in the Court's Memorandum Opinion denying Palmer's first motion to dismiss.  (ECF No. 38.)

[3]     Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[4]     According to the Government, on May 2, 2022—after Palmer's arrest and initial appearance on the charge pending before this Court—Palmer committed New Jersey fourth-degree unlawful possession of a weapon, for which he was convicted on March 22, 2023.  On May 25, 2022, Palmer committed the offense of resisting arrest, for which he was convicted on March 22, 2023.  And on March 22, 2023, Palmer is alleged to have committed first-degree attempted murder and first-degree conspiracy to commit murder, charges which remain pending today.  (ECF No. 46 at 12-13.)  Palmer does not dispute this additional criminal history.  (*See* ECF No. 47.)

On May 16, 2022, the Court granted a motion to withdraw filed by Palmer's defense counsel. (ECF No. 17.)  On May 19, the Court appointed Palmer's current defense counsel.  (ECF No. 18.)  On May 27, the Government filed a motion for a continuance under the Speedy Trial Act to "permit defense counsel the reasonable time necessary for effective preparation in this matter and to allow the parties to conduct plea negotiations."  (ECF No. 19.)  The motion noted that as of the date it was filed, Palmer's defense counsel had not yet confirmed with Palmer whether he would consent to a continuance under the Speedy Trial Act.  (*Id.* at 2 n.1.)  Pursuant to the district's 2022 motion calendar, if Palmer wished to oppose the May 27, 2022 Continuance Motion, Palmer's response was due on or before June 7.[5]  Palmer never responded to the May 27, 2022 Continuance Motion.

On June 16, 2022, the Government emailed a joint proposed continuance order to the Court.  (ECF No. 46 at 19-20.)   The Government advised that Palmer consented to the proposed continuance order and that if the Court granted the continuance, the May 27, 2022 Continuance Motion would "become moot and will be withdrawn."  (*Id.* at 20.)  On June 17, the Court signed the Order and sent it to the parties via email.  (*Id.*)  The June 17, 2022 Continuance Order purported to (1) continue the case from June 16 through September 14, 2022, and (2) exclude that period from the Speedy Trial Act's 70-day deadline to bring the case to trial.  (*Id.* at 16.)  The Order found that "the ends of justice served by granting the continuance outweigh the best interest of the public and the defendant in a speedy trial."  (*Id.* at 16.)  In its June 17 email, the Court asked defense counsel to have Palmer "sign the order" and to return "the signature page to attach" to the order. (*Id.* at 19.)  Palmer's defense counsel responded by asking the Court whether it was necessary for

---

[5]     The United States District Court for the District of New Jersey's 2022 Motion Calendar may be found at https://www.njd.uscourts.gov/sites/njd/files/2022Motions.pdf.

him to retrieve Palmer's signature, noting, "I do have his approval."  (*Id.*)  No further action was taken with regards to the June 17, 2022 Continuance Order and no further activity occurred in the case until December 15, 2022, when the Court granted another joint continuance request and excluded time under the Speedy Trial Act from December 16, 2022 through March 16, 2023.  (ECF No. 20.)

On January 30, 2023, the case was reassigned to the undersigned.  (ECF No. 21.)  The Court granted four additional joint continuance requests, tolling time from March 17, 2023 to March 21, 2024.  (ECF Nos. 22-25.)  The Government proffers—and Palmer does not disagree— that the multiple continuances were intended in large part to provide defense counsel with enough time to prepare pretrial motions to suppress evidence and to dismiss the indictment pursuant to the United States Court of Appeals for the Third Circuit's decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc).  (ECF No. 46 at 3.)  On March 18, 2024, Palmer filed an omnibus motion seeking such relief.  (ECF No. 27.)  On March 28, Palmer filed an amended motion.  (ECF No. 32.)  That same day, the Court signed the parties' joint proposed briefing schedule, with briefing set to be complete by May 17, 2024.  (ECF No. 33.)  On June 18, the Court denied in part Palmer's motion.  (ECF Nos. 38 & 39.)  On June 25, the Court conducted a telephonic conference call, during which the Government advised the Court that it had discovered that the Speedy Trial Act had likely been violated.  (ECF No. 41.)  On June 26, Palmer filed the instant motion to dismiss for violations of his right to a speedy trial.  (ECF No. 43.)  The Court directed briefing to be complete by July 26.  (ECF No. 44.)  The Government opposed on July 24, and Palmer replied on the same day.  (ECF Nos. 46 & 47.)

## II.    DISCUSSION

### A.    Calculation of Non-Excludable Days

The Speedy Trial Act requires that a criminal defendant go to trial "within seventy days of the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." § 3161(c)(1).[6]  If a defendant is not brought to trial within the time limit established by § 3161(c) as extended by § 3161(h), the indictment shall be dismissed upon the defendant's motion. § 3162(a)(2).  The defendant bears the burden of proof of supporting such motion. *Id.*  Upon such a motion, the district court must identify and tally the number of elapsed days that count towards the speedy trial clock's seventy-day limit. *Zedner v. United States*, 547 U.S. 489, 507 (2006).

Section 3161(h) sets forth certain periods of delay that "shall be excluded . . . in computing the time within which the trial of any such offense must commence."  Relevant here, § 3161(h)(7)(A) excludes delay resulting from a continuance granted by the Court based on its "findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  Section 3161(h)(1)(D) excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  And § 3161(h)(1)(H) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."  Courts interpret § 3161(h)(1)(H) to mean that "if the district court chooses to resolve [a] motion without holding a hearing, the clock starts ticking a maximum of thirty days after it has 'receive[d] all the papers it reasonably expects' from the

---

[6]    Section 3164(b) also provides that a detained defendant shall be brought to trial "not later than ninety days following the beginning of such continuous detention."  The periods of delay enumerated in § 3161(h) are also excluded in computing this time limitation. *Id.*

parties" that are necessary to decide the motion. *United States v. Adams*, 36 F.4th 137, 148 (3d Cir. 2022) (citing *Henderson v. United States*, 476 U.S. 321, 329 (1986)). Put differently, the 30-day period of excludable delay for motions "under advisement" with a court does not begin to run immediately when the motion is filed, but only after the court "receives all the papers it reasonably expects" necessary to decide the motion. *Henderson*, 476 U.S. at 329; *see also United States v. Graves*, 722 F.3d 544, 548 n.6 (3d. Cir. 2013).

Here, the Government and Palmer agree that the first non-excludable day under the Speedy Trial Act elapsed on May 17, 2022.[7] And both Palmer and the Government agree that more than 70 non-excludable days have elapsed under the Speedy Trial Act, requiring dismissal. (ECF No. 45 at 2-3; ECF No. 46 at 1.)

The parties, however, disagree as to how many non-excludable days have elapsed in this matter. Palmer contends that trial should have commenced by August 5, 2022 at the latest. (ECF No. 45 at 3-4.) Palmer argues that between 133 and 206 non-excludable days elapsed between the Government's May 27, 2022 Continuance Motion and the Court's December 15, 2022 Continuance Order. (*Id.* at 4; ECF No. 47 at 1-2.) The Government asserts that 92 non-excludable days elapsed between the May 27, 2022 Continuance Motion and the December 15, 2022 Continuance Order. (ECF No. 46 at 8.) The Government argues that the period between June 16 through September 14, 2022 should be excluded pursuant to the Court's signed June 17, 2022

---

[7]     The parties provide different explanations for the clock beginning to run on May 17, 2022. (ECF No. 45 at 2-3; ECF No. 46 at 4.) Palmer believes the clock was triggered by his arraignment on May 16. (ECF No. 45 at 2-3.) But the Court agrees with the Government that because Palmer had already made a preindictment initial appearance, the Speedy Trial Clock would have started to run upon the filing of the indictment on April 14, 2022, but for the Court granting a joint continuance order that tolled the clock until May 5, 2022. (ECF No. 12.) On May 5, defense counsel filed a motion to withdraw, which tolled the clock under § 3161(h)(1)(D) until May 16, when the Court ruled on the motion. Thus, the clock began to run on May 17. Palmer does not contest this analysis in his reply.

Continuance Order that was emailed to the parties but never published on the docket.  (ECF No. 46 at 3-6.)  Palmer, however, contends that his lack of signature and the Order's absence from the docket indicates that the Order never became effective.  (ECF No. 47 at 1-2.)

Although the confusion surrounding the June 17, 2022 Continuance Order explains much of the delay in this matter, the Court will not exclude this period from its Speedy Trial Act calculation.   Under the Speedy Trial Act, "when a district court grants an ends-of-justice continuance, it must 'se[t] forth, in the record of the case, either orally or in writing, its reasons' for finding that the ends of justice are served and they outweigh other interests."  *Zedner*, 547 U.S. at 506 (quoting § 3161(h)(8)(A).  The Court "does not need to articulate the reasons at the same time that [it] grants the continuance; a subsequent explanation is sufficient."  *United States v. Boone*, Crim. No. 00-3, 2002 WL 31761364, at *9-11 (D.N.J. Dec. 6, 2002) (citing *United States v. Lattany*, 982 F.2d 866, 877 (3d Cir. 1992)).  But the Court can delay articulating its reasons for granting the continuance on the record only "if the order granting the continuance is entered before the Act's seventy-day limit would have otherwise expired."  *Lattany*, 982 F.2d at 877.  Put differently, a judge cannot retroactively grant an ends-of-justice continuance "after the expiration of the seventy-day period was brought to its attention by a motion to dismiss."  *Id.* (citing *United States v. Carrasquillo*, 667 F.2d 382, 385 (3d Cir. 1981)).  Here, because the June 17, 2022 Continuance Order was not entered on the docket before the expiration of the 70-day period was brought to the Court's attention, publishing the Order onto the docket at this stage could create the perception that it was entered "retroactively" to mitigate the delay in this case.  *See id.*  Thus, out of an abundance of caution, the Court will not exclude the entire period of time between June 16 and September 14, 2022.

Instead, the Court has calculated the number of non-excludable days, which differs from that proffered by both the Government and Palmer. First, between May 17 and May 27, 10 nonexcludable days elapsed until the clock stopped when the Government filed its May 27, 2022 Continuance Motion. *See* § 3161(h)(1)(D) (excluding periods of delay resulting from "any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). Palmer's response to the motion was due on June 7. On June 8, after receiving no response, the clock would begin to run as the Court had received all the papers it could reasonably expect to decide the motion. *See Adams*, 36 F.4th 148. Thus, the excludable 30-day "advisement period" began running on June 8, 2022 and ended on July 8, 2022. The Speedy Trial clock then began running on July 9, 2022, resulting in a Speedy Trial Act violation 60 days later on September 7, 2022. § 3161(c)(1). Another 100 non-excludable days elapsed until December 15, 2022, when the Court entered an ends-of-justice continuance order. Between December 16, 2022 and August 27, 2024, another 16 non-excludable days elapsed.

In sum, the Court finds that a total of 186 non-excludable days have elapsed in this matter. The Court provides a more detailed summary in the table below:

| Docket Entry (If Applicable) | Date | Event | Number of Non-Excludable Days | Reason for Tolling (If Applicable) |
|---|---|---|---|---|
| ECF No. 12 | April 5, 2022 | Continuance ordered until May 5, 2022. | 0 | § 3161(h)(7) |
| ECF No. 13 | April 14, 2022 | Palmer Indicted. | 0 | |
| ECF No. 15 | May 5, 2022 | Motion to Withdraw as Counsel Filed. | 0 | § 3161(h)(1)(D) |
| ECF No. 17 | May 16, 2022 | Motion to Withdraw as Counsel Granted | 0 | |
| | May 17 to May 26, 2022 | Non-Excludable Days | 10 | |
| ECF No. 19 | May 27, 2022 | Continuance Motion Filed | 0 | § 3161(h)(1)(D) |

|  | June 7, 2022 | Palmer's Deadline to Respond to the May 27, 2022 Continuance Motion. | 0 |  |
|  | June 8, 2022 | Beginning of the Court's 30-day advisement period. | 0 | § 3161(h)(1)(H); *Adams*, 36 F.4th at 148. |
|  | July 8, 2022 | Date upon which the Court received all papers it reasonably expected to rule on the May 27, 2022 continuance motion, plus 30 days. | 0 | § 3161(h)(1)(H); *Adams*, 36 F.4th at 148. |
|  | July 9 to December 15, 2022 | Non-Excludable Days. Speedy Trial Act violated on September 7, 2022. | 160 (170 total) |  |
| ECF No. 20 | December 16, 2022 | Continuance Ordered until March 16, 2023. | 0 | § 3161(h)(7) |
| ECF No. 22 | March 16, 2023 | Continuance Ordered until June 15, 2023. | 0 | § 3161(h)(7) |
|  | June 16 to June 20, 2023 | Non-Excludable Days. | 5 (175 total) |  |
| ECF No. 23 | June 22, 2023 | Continuance Ordered until September 20, 2023. | 0 | § 3161(h)(7) |
| ECF No. 24 | September 20, 2023 | Continuance Ordered until December 21, 2023. | 0 | § 3161(h)(7) |
| ECF No. 25 | December 21, 2023 | Continuance Ordered until March 21, 2024. | 0 | § 3161(h)(7) |
| ECF No. 27 | March 18, 2024 | Palmer's Omnibus Motion Filed. | 0 | § 3161(h)(1)(D) |
|  | June 16, 2024 | Final Brief of Motion Filed, Plus Thirty Days. | 0 | § 3161(h)(1)(H); *Adams*, 36 F.4th at 148. |
|  | June 17, 2024 | Non-Excludable Day. | 1 (176 total) |  |
| ECF No. 39 | June 18, 2024 | Palmer's Omnibus Motion Decided. | 0 |  |
|  | June 19 to June 25, 2024 | Non-Excludable Days. | 7 (183 total) |  |
| ECF No. 43 | June 26, 2024 | Palmer's Motion to Dismiss Filed. | 0 | § 3161(h)(1)(D) |
|  | Aug. 23, 2024 | Final Brief of Motion Filed, Plus Thirty Days. | 0 | § 3161(h)(1)(H); *Adams*, 36 F.4th at 148. |
|  | Aug. 24-26, 2024 | Non-Excludable Days. | 3 (186 total) |  |
|  | Aug. 27, 2024 | Palmer's Motion Decided. | 0 |  |

Because the number of non-excludable days has exceeded the 70 days allowed under § 3161(c), the Court must dismiss the indictment. § 3162(a)(2).

### B.    Dismissal Without Prejudice

Next, the Court must determine whether to dismiss the indictment with or without prejudice. § 3162(a)(2). Palmer moves for dismissal with prejudice, while the Government asks for dismissal without prejudice. (ECF No. 45 at 1; ECF No. 46 at 1.)

When deciding whether to dismiss with or without prejudice, the district court must "consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." § 3162(a)(2). The length of the delay and presence or absence of prejudice to the defendant are among the "other[]" non-express factors that the Speedy Trial Act directs district courts to consider. *United States v. Stevenson*, 832 F.3d 412, 422 n.8 (3d Cir. 2016) (citations omitted). Congress did not intend either type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation. *United States v. Taylor*, 487 U.S. 326, 334 (1988). The Court will consider each factor in turn.

### 1.    *Seriousness of the Offense*

The first factor centers on "society's interest in bringing the particular accused to trial," because "[t]he graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence." *Stevenson*, 832 F.3d at 419 (citing *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988)). Accordingly, "[w]hen the crime is serious, the court should dismiss with prejudice only for a correspondingly serious or prejudicial delay." *United States v. Cardona-Rivera*, 64 F.3d 361, 363-64 (8th Cir. 1995).

Here, Palmer was indicted for possessing a firearm "knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year" in violation of § 922(g)(1).  (ECF No. 13.)  "[F]irearms offenses are serious crimes for purposes of the Speedy Trial Act."  *Stevenson*, 832 F.3d at 420; *see also United States v. Williams*, Crim. No. 2019-41, 2019 WL 4786948, at *1-4 (D.V.I. Sept. 30, 2019) ("[A]s a general rule, 'firearms offenses are serious crimes for purposes of the Speedy Trial Act.'" (citing *Stevenson*, 832 F.3d at 420; *United States v. Jones*, 241 F. App'x 676, 679 (11th Cir. 2007))); *United States v. Green*, 471 F. Supp. 3d 577, 590 (M.D. Pa. 2020) ("Although here Defendant is charged only with firearms offenses, this fact does not undermine the seriousness of the charged offenses. . . . [T]he Court concludes that the 18 U.S.C. § 922 charges alone are serious."); *Langforddavis v. United States*, Civ. No. 13-2921, 2016 WL 4544338, at *3 (D.N.J. Aug. 30, 2016) (noting that "violations of § 922(g) are routinely treated as 'serious' under the Speedy Trial Act" and denying the petitioner's motion to vacate his conviction for a single count of § 922(g) due to trial counsel's failure to move for dismissal under the Speedy Trial Act).

Palmer's exposure to a ten-year maximum sentence also weighs in favor of treating his charge as "serious" under the Speedy Trial Act.  *See Williams*, 2019 WL 4786948, at *3 (treating a single count under § 922(g) for possession of a machine gun as "serious" due to its maximum sentence of ten years and noting that crimes with penalties greater than five years are generally considered "serious offenses for the purposes of the Speedy Trial Act" (collecting cases)). Palmer's five alleged prior felony convictions between 2006 and 2016, which include convictions for third-degree robbery, second-degree attempted robbery, second-degree attempted assault, first-degree attempted making or possessing dangerous contraband in prison, and unlawful possession of a firearm as a convicted felon also weigh in favor of a finding that Palmer's charge is serious.

(*See* ECF No. 46 at 9-10.)  *See United States v. Done*, Crim. No. 09-601, 2011 WL 3912756, at *3 (D.N.J. Sept. 6, 2011), *aff'd*, 589 F. App'x 49 (3d Cir. 2015) (considering the defendant's previous narcotics convictions when determining the seriousness of the offense).

Palmer concedes that his alleged "offense is serious as is any felony," but points out that when he was arrested for this offense, he "did not display, point, brandish or otherwise use [the gun]; did not engage in threatening conduct; and any resistive conduct did not involve the gun he allegedly possessed.  Indeed, his alleged actions were to dispossess himself of the gun."  (ECF No. 45 at 5-6.)  The Court finds that these mitigating facts do not outweigh the seriousness of the charged offense in this case given the nature of the alleged offense and Palmer's alleged criminal history.  *See Jones*, 241 F. App'x at 679 ("As the district court found, the fact that Jones had not been caught using the gun or committing violent acts does not detract from the fact that Jones was a repeated felon who possessed firearms. Accordingly, the district court did not abuse its discretion in finding that Jones's offense was serious enough to weigh in favor of dismissal without prejudice."); *Green*, 471 F. Supp. 3d at 590 (same).

For these reasons, the Court finds that Palmer's § 922 charge is "serious" for purposes of the Speedy Trial Act and weighs in favor of dismissal without prejudice.

### 2.    *Facts and Circumstances Leading to Dismissal*

The second factor requires the Court "to consider the reasons for the delay: did it stem from 'intentional dilatory conduct' or a 'pattern of neglect on the part of the Government,' or rather, from a relatively benign hitch in the prosecutorial process?"  *Stevenson*, 832 F.3d at 420 (quoting *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005)).  A finding of bad faith or pattern of neglect on behalf of the Government weighs in favor of dismissal with prejudice, as opposed to "an isolated unwitting violation."  *Stevenson*, 832 F.3d at 420 (quoting *Taylor*, 487

U.S. at 338-39).  And "while the court and the government are each partly responsible for effectuating a defendant's right to a speedy trial, a defendant that lets the time run without asserting his rights under the Act has less of a claim to a dismissal with prejudice than a defendant who makes a timely assertion, but is unheeded." *United States v. Jones*, 213 F.3d 1253, 1257 (10th Cir. 2000) (citing *United States v. Saltzman*, 984 F.2d 1087, 1094 (10th Cir. 1993) (finding that because the defendant knowingly acquiesced to the postponement of his indictment, the facts and circumstances leading to dismissal weighed in favor of dismissal without prejudice)); *United States v. Fountain*, 840 F.2d 509, 513 (7th Cir. 1988), *cert. denied*, 488 U.S. 982 (1988) ("A defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention.").

Here, Palmer argues that the elapsed "non-excludable time was occasioned by the Court's failure (not the instant District Judge but a judge previously assigned to the case) failing to timely rule on a motion filed by the government and without any proper justification for such failure. . . . The dismissal is occasioned by the neglect of the Court and the government, which favors a dismissal with prejudice." (ECF No. 45 at 6.)  Palmer further contends that he "did not do anything to preclude or delay the matter from proceeding to trial within the required time periods."  (*Id.* at 7-8.)  The Government responds that the violation in this case arose not out of bad faith, intentional misconduct, or a pattern of neglect, but "because the undersigned Assistant United States Attorney misunderstood the law to be that the filing of the May 27, 2022 Continuance Motion tolled the accumulation of non-excludable days under [the] Speedy Trial Act until that motion was decided." (ECF No. 46 at 10.)  The Government also highlights the fact that it "promptly notified defense counsel" once it realized that it had misapplied the Speedy Trial Act.  (*Id.* at 11.)

Upon careful review of the docket and the exhibits attached to the Government's opposition brief (ECF No. 46), the Court finds that the violation in this case is closer to "an isolated unwitting violation," as opposed to the type of bad faith or pattern of neglect that warrants dismissal with prejudice. *See Stevenson*, 832 F.3d at 420 (quoting *Taylor*, 487 U.S. at 338-39). In so ruling, the Court in no way intends to understate the seriousness of the violation that occurred in this matter. But the "fact that a violation has taken place is not alone sufficient for the application of the more severe sanction of dismissal with prejudice, which . . . is a strong message indeed, and one ill-suited to an isolated and inadvertent violation." *Cano-Silva*, 402 F.3d at 1035.

Here, the facts and circumstances leading to the Speedy Trial violation do not demonstrate that the Government acted with the level of culpability necessary to warrant dismissal with prejudice. First, the record does not demonstrate—nor does Palmer argue—"that the Government acted in bad faith or to gain some tactical advantage." *See Stevenson*, 832 F.3d at 420. Although the responsibility for effectuating Palmer's right to a speedy trial ultimately lies with the Court and the Government, the record does not show that the violation in this case resulted from a "truly neglectful attitude." *Id.* (quoting *Taylor*, 487 U.S. at 338-39). Instead, the violation appears to have resulted from the parties' mistaken belief that the clock had been properly tolled at the parties' request, as well as the Government's misunderstanding as to the May 27, 2022 Continuance Motion's effect on the clock and Palmer's lack of assertion of his rights under the Speedy Trial Act.[8]

---

[8]    The responsibility to comply with the Speedy Trial Act lies with the Court and the Government, and Palmer had no duty to bring the delay to the Court's attention. *See United States v. Kottmyer*, 961 F.2d 569, 572 n.2 (6th Cir. 1992). But when weighing whether to dismiss with or without prejudice, the Court may consider Palmer's failure to earlier assert his rights under the Speedy Trial Act as well as his subsequent requests for continuances in this matter. *See Jones*, 213 F.3d at 1257; *Saltzman*, 984 F.2d at 1094.

The Court's docket reflects a period of inactivity between the May 27, 2022 Continuance Motion (ECF No. 19) and December 15, 2022, when the Court ruled on a subsequent continuance motion (ECF No. 20)—a significant amount of time that, in any other case, might warrant dismissal with prejudice.  *See, e.g.*, *United States v. Noble*, 509 F. Supp. 3d 399, 410, 413 (W.D. Pa. 2020) (dismissing an indictment with prejudice where the case was pending for more than 100 days beyond the 70-day limitation and the Court attempted to remedy the violation by holding a hearing on a motion 29 months after the motion was filed).

But between July 8 (when the 30-day "advisement period" of the May 27, 2022 Continuance Motion expired) and December 15, 2022, the case did not simply languish for 160 days without any justification.  Instead, it is apparent that the parties believed that the clock had been properly tolled pursuant to a continuance to which Palmer expressly consented.  The Government and Palmer emailed a joint continuance request to the Court on June 16, 2022—well within the 30-day advisement period of the pending May 27, 2022 Continuance Motion.  *See* § § 3161(h)(1)(H); *Adams*, 36 F.4th at 148.  The Court granted the request the next day.  (ECF No. 46 at 15-16.)  Thus, for a period of 90 days from June 16 to September 14, 2022, the Government, Palmer, and the Court believed that the clock had been properly tolled at the request of both parties to "permit defense counsel the reasonable time necessary for effective preparation in this matter and to allow the parties to conduct plea negotiations."  (*Id.* at 15.)  Palmer argues that his lack of signature and the Order's absence from the docket indicates that the Order never became effective. (ECF No. 47 at 1-2.)  Even so, the record demonstrates that at the time, Palmer's defense counsel believed that the continuance was in Palmer's best interests and that his signature was unnecessary. (ECF No. 46 at 19.)  Such evidence does not demonstrate intentional misconduct or even a pattern of neglect, given that the parties understood the case to be continued.

Similar misunderstandings regarding continuances have justified dismissal without prejudice in other circuits. For example, in *Cano-Silva*, counsel for both the Government and defendant requested a continuance to facilitate plea negotiations. 402 F.3d at 1032. "The district court was notified of the request for continuance by telephone and the trial date was stricken. Each party believed the other was to make the motion to exclude time from computation under the Speedy Trial Act, and as a result the motion was never made." *Id.* The mistake resulted in roughly five months of non-excludable delay. *Id.* The United States Court of Appeals for the Tenth Circuit affirmed the district court's dismissal without prejudice, agreeing with the district court's finding that the violation was the result of the "inadvertence of both parties and not [of] any deliberate attempt by the government to manipulate the proceedings or any pattern of dilatory conduct or neglect by the government." *Id.* at 1036. The Court is similarly satisfied that the instant violation was a result of a misunderstanding as opposed to a pattern of neglect.

Although the Court has found that the period between June 16 and September 14, 2022 is nonexcludable, the confusion surrounding the Court's signed June 17, 2022 Continuance Order explains the delay that occurred until September 14, 2022. But the Order does not explain the 92 days of non-excludable delay that occurred between September 15 (the expiration of the June 16, 2022 Continuance Order) and December 15, 2022. The Government proffers that it mistakenly believed that this time was excluded because the Court had not yet ruled on its May 27, 2022 Continuance Motion. (ECF No. 46 at 6.) Palmer's silence during this period is also relevant to the Court's analysis, as "a defendant that lets the time run without asserting his rights under the Act has less of a claim to a dismissal with prejudice than a defendant who makes a timely assertion, but is unheeded." *Jones*, 213 F.3d at 1257; *see also Saltzman*, 984 F.2d at 1094; *Fountain*, 840 F.2d at 513. These 92 non-excludable days elapsed on the heels of a joint request by both parties

16

to continue the case. They were followed by a series of five additional joint continuance requests, which were largely intended to allow defense counsel to prepare several complex motions. (ECF Nos. 20, 22-25.) Rather than demand the earliest possible trial date, Palmer consistently joined the Government in requesting continuances. And it was the Government that brought the violation to the attention of both the Court and Palmer. (*See* ECF No. 46 at 11.) Again, the 92 days of non-excludable delay that occurred between September 15 and December 15, 2022 constitutes a serious lapse in the administration of the Speedy Trial Act. But Palmer's consistent participation in the continuance requests demonstrates that the violation was a result of a single misunderstanding, as opposed to intentional misconduct or a "truly neglectful attitude." *Taylor*, 487 U.S. at 338.[9]

For these reasons, the Court finds that the facts and circumstances leading to the violation weigh in favor of dismissal without prejudice. *See also Kottmyer*, 961 F.2d at 572 (affirming dismissal without prejudice where the parties and district court allowed 111 non-excludable days to elapse after losing track of the status of the defendant's competency determination, and the court blamed both the Government and defendant "for failing to bring the delay to the court's attention"); *Jones*, 213 F.3d at 1253 (affirming dismissal without prejudice where "[m]uch of the delay was attributable to the court's method of disposition of a suppression motion," but the defendant failed to assert his rights under the Speedy Trial Act until the eve of trial); *Williams*, 2019 WL 478694, at *4-5 (dismissing without prejudice even after finding that the delay was a result of the Government belatedly adding a charge in order to gain "additional time for trial," which constituted "intentional dilatory conduct").

---

[9]     Indeed, outside of the 160 non-excludable days from July 9 to December 15, 2022—during much of which the parties believed that the case had been properly continued—only 26 non-excludable days have elapsed in this case.

### 3.    *Impact of a Reprosecution*

Finally, the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice also supports a dismissal without prejudice. "The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Stevenson*, 832 F.3d at 422 (citing *United States v. Howard*, 218 F.3d 556, 562 (6th Cir. 2000)). Prejudice can include both "(1) trial prejudice, i.e., prejudice in the defendant's ability to mount a defense at trial, and "(2) non-trial prejudice," such as restrictions on the defendant's liberty and any "impact [of his incarceration] on his life circumstances." *United States v. Bert*, 814 F.3d 70, 82 (2d Cir. 2016) (citing *Taylor*, 487 U.S. at 340-41; *United States v. Moss*, 217 F.3d 426, 431-32 (6th Cir. 2000)). Additionally, the length of the delay is "a measure of the seriousness of the speedy trial violation" and "in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant." *Taylor*, 487 U.S. at 340.

Here, Palmer has not identified any prejudice that he would suffer at trial as a result of reprosecution, such as unavailable witnesses or stale evidence. *See Stevenson*, 832 F.3d at 422 (dismissing without prejudice where there was no evidence that the delay impaired the defendant's "ability to mount an effective defense"); *United States v. Jones*, Crim Nos. 20-2765 & 20-2766, 2021 WL 6337787, at *2 (3d Cir. Sept. 10, 2021) (dismissing without prejudice where the defendant did not show that the "delay hurt his trial preparation"). Accordingly, there is no evidence that reprosecution would prejudice Palmer's ability to mount a defense.

Instead, Palmer argues that he has "suffered severe and permanent physical injuries during the time he has been pre-trial detained . . . on the instant Indictment," including being "stabbed

numerous times by other inmates at the jail, which required a 4-day hospitalization to treat his severe injuries," and "injury to his emotional and physical well-being because of his extended incarceration." (ECF No. 45 at 8-9.)  Palmer's severe physical injuries occurred on September 10, 2022.  (*See* ECF No. 45-1 at 210.)  Although this Court has ruled that the Speedy Trial Act was technically violated three days earlier (September 7, 2022), Palmer's injuries occurred during the continuance period of June 16 to September 14, 2022 that the Government and Palmer had requested in a proposed Order, which the Court signed on June 17.  (ECF No. 46 at 15-16.)  The record shows that Palmer's injuries occurred during a period in which both parties believed that the case had been properly continued pursuant to their joint request.  Thus, although the type of injuries that Palmer suffered might well justify dismissal with prejudice under different circumstances, the Court finds this unfortunate incident does not warrant "the more severe sanction of dismissal with prejudice" where the record shows that both parties were under the impression that the case had been properly continued at their request at the time this incident occurred.

Additionally, the Government asserts that "Palmer sustained no additional loss of liberty because four other detainers had been lodged against him throughout the pendency of the instant offense," which "would result in the same or a similar loss of liberty to Palmer regardless of the Speedy Trial Act violation." (ECF No. 46 at 12-13.)  According to the Government, the "Southern District of New York lodged a detainer against Palmer in September 2021 at the time of his arrest in this case.  Then, on May 2, 2022, Palmer committed New Jersey fourth-degree unlawful possession of a weapon (N.J.S.A. 2C:39-5D), for which he was convicted on March 22, 2023.  Next, on May 25, 2022, Palmer committed the offense of resisting arrest (N.J.S.A. 2C:29-2A(1)), for which he was convicted on March 22, 2023.  Finally, on March 22, 2023, Palmer is alleged to have committed first-degree attempted murder (N.J.S.A. 2C:5-1) and first-degree conspiracy to

commit murder (N.J.S.A. 2C:5-2), charges which remain pending today." (*Id.*) Palmer does not dispute the accuracy of this summary of his more recent criminal history, but argues that his "other matters—including his supervised release violation petition in federal court in New York—remain open and have been awaiting the conclusion of this matter before proceeding. That itself constitutes prejudice in that his hearings in those matters have been delayed beyond the time frame in which they otherwise would have been addressed." (ECF No. 47.) But even if Palmer's other criminal matters have been delayed due to this case, the length of this case is due in large part to the multiple continuances that he requested together with the Government. (*See* ECF Nos. 20, 22-25, 46 at 19-20.) Palmer cannot establish a connection between the Speedy Trial Act violation and his injuries where the additional detainers lodged against him would have resulted in a similar loss of liberty.

Palmer further contends that dismissal without prejudice "would provide no deterrent message to Courts or prosecutors" and "would sanction an injustice to a defendant's and the public's right to a speedy trial." (ECF No. 45 at 7.) But because the Government's conduct in this case was unintentional, "penalizing the government for the delay [would not appreciably] deter any similar behavior in the future." *Stevenson*, 832 F.3d at 422 (quoting *United States v. Abdush–Shakur*, 465 F.3d 458, 463 (10th Cir. 2006)). And dismissal "without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *Id.* at 423 (quoting *Taylor*, 487 U.S. at 342.)

Finally, the Court also acknowledges that the length of the delay in this case is relatively significant and might tend to weigh in favor of dismissal with prejudice under different circumstances. *See, e.g.*, *United States v. Clymer*, 25 F.3d at 824, 832 (9th Cir. 1994) (finding that

an indictment pending for nearly a year and a half—five months of which were non-excludable—weighed in favor of dismissal with prejudice).  But even where the length of the delay "is not insignificant, neither is it dispositive." *Cano-Silva*, 402 F.3d at 1035.  Indeed, Palmer's attorney "agreed to many of the continuances" in this matter, suggesting "that the delay may have helped him prepare for trial."  *Jones*, 2021 WL 6337787, at *2; *Jones*, 213 F.3d at 1258 (holding that although a delay between 216 and 414 non-excludable days "is very serious and . . . [u]nder different circumstances, such a lengthy delay would likely warrant dismissal with prejudice," given "the seriousness of the crimes . . . , the government's relative lack of culpability for the delay, and [the defendant's] inability to demonstrate prejudice, we cannot say that the district court abused its discretion in dismissing the indictment without prejudice").

    For these reasons, considering the requisite factors on the current record, the Court finds that dismissal without prejudice is the appropriate remedy.[10]

---

[10]    Finally, Palmer's arguments focus on his statutory rights under the Speedy Trial Act, and Palmer makes no argument that his right to a speedy trial under the Sixth Amendment to the United States Constitution was violated.  But the three-year delay in bringing Palmer to trial is likely presumptively prejudicial.  *See Jones*, 2021 WL 6337787, at *2 (citing *United States v. Battis*, 589 F.3d 673, 682 (3d Cir. 2009)).  Thus, the Court must consider whether Palmer's constitutional right to a speedy trial was violated by balancing the length of delay, the reasons for the delay, the prejudice to Palmer, and how urgently he asserted his speedy-trial right.  *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972).  On balance, only the first *Barker* factor (the length of the delay) weighs in Palmer's favor.  Although the length of the delay from the date of formal accusation to the present motion is initially presumptively prejudicial and warrants an analysis under *Barko*, "this factor only slightly weighs in favor of [Palmer] because it is closely entwined with the reason for the delay."  *See Green*, 471 F. Supp. 3d at 595-96.  Second, as discussed previously, the majority of the delay in this case is due to the joint continuances filed by both the Government and Palmer, even if there was a "small degree of negligence on the part of the Government for non-excludable time over seventy days."  *Id.* at 597; *see also Jones*, 2021 WL 6337787, at *2 (finding no Sixth Amendment violation where the delay "was caused by reasonable requests by both sides for more time" and "long pretrial negotiations").  Third, Palmer "waited more than three years after his arrest to assert his right only 'on the eve of trial.'"  *Id.*  And fourth, while Palmer suffered prejudice in the form of physical injuries, these injuries were not solely caused by an unlawful delay for the reasons previously discussed, and Palmer's ability to mount an effective defense has not been harmed.  *Id.*  Accordingly, while Palmer has established a violation of the Speedy Trial Act, he

III.   **CONCLUSION**

For the foregoing reasons, and other good cause shown, Palmer's motion is **GRANTED** in part and **DENIED** in part.  The indictment is **DISMISSED WITHOUT PREJUDICE**.  An appropriate Order follows.

Dated: August 27, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

has not established a violation of his Sixth Amendment right to a speedy trial under the *Barko* factors.